**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JUDITH VAZQUEZ,                     :
                                    :     Civil Action No. 04-2505 (JAP)
            Petitioner,             :
                                    :
        v.                          :     **OPINION**
                                    :
CHARLOTTE BLACKWELL, et al.,        :
                                    :
            Respondents.            :


**APPEARANCES:**

Petitioner pro <u>se</u>                Counsel for Respondents
Judith Vazquez                          Edward J. De Fazio
Edna Mahan Corr. Facility               Prosecutor of Hudson County
P.O. Box 4004                           Administration Building
Clinton, NJ 08809                       595 Newark Avenue
                                        Jersey City, NJ 07306


**PISANO**, District Judge

        Petitioner Judith Vazquez, a prisoner currently confined at

Edna Mahan Correctional Facility in Clinton, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  The respondents are Charlotte Blackwell and the

Attorney General of New Jersey.

        For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The following evidence was presented by the State. On September 12, 1992, the body of Aurelio Padilla (aka "Tattoo") was discovered by an early morning jogger behind Christ Hospital in Jersey City.  The victim had been stabbed approximately fifty times.  Later that day, Jersey City police received a telephone inquiry concerning whether a body with multiple stab wounds had been found.  It was later determined that the call had been placed by defendant's sister.  Maria LaRosa.

> LaRosa had received a telephone call from the defendant on the morning of the twelfth.  During the conversation, defendant confided in her sister that she had killed the man she had brought to a recent family party.  Defendant told LaRosa that she stabbed the victim about one hundred times.  She stated that Padilla had hit her earlier in the week and was becoming too possessive of her.  Defendant admitted to LaRosa that she killed Padilla in the hallway of her apartment and that she had to clean blood from her car after transporting the victim's body.

> After going to work, LaRosa contacted the police. She outlined the story that defendant had described to her.  As a consequence, the police arrested defendant.

> Even after her arrest, the defendant continued to confide in LaRosa.  On September 14, defendant telephoned LaRosa from jail.  In this conversation, defendant gave details of the stabbing, indicating that Manny Manguel had held Padilla while she stabbed him and that a building security guard had helped her carry the body to the car.  Defendant also instructed LaRosa

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

to check and remove any blood from under the tiles of
the hallway in her apartment.

LaRosa contacted the police again and informed
them of the conversation she had had with defendant.
LaRosa agreed to a wire tap being placed on her home
telephone and the telephone at defendant's apartment.
Portions of the taped conversations were read at trial.
A telephone conversation between the sisters on
September 16 indicated that defendant was an accomplice
to someone else.  In one conversation, defendant stated
that Manny was behind the scheme to lure Padilla to the
apartment and that she was trying to protect LaRosa.
Defendant called LaRosa again on September 21 and told
her that she threw the knife away because it might have
Manny's fingerprints on it.

Defendant sent a letter to LaRosa dated October
13, 1992.  The letter provided in part:

All this is true.  I told the lawyer.  The only
thing I never told him was that I planned this.
I'm the one who set it up.  If the jury or judge
knows this, I get the death penalty automatically.
Because that's called premeditated murder.  So
that's why I changed the story to the lawyer that
Manny was just supposed to talk to him only ...
Listen, as soon as you finish reading this letter,
burn it.  Don't throw it in the garbage.  You
could be being watched.  Just in case cause they
usually go through people's garbage, so burn it in
your home.  Okay?  These papers are dangerous.
Burn them.

Manguel testified on behalf of defendant as an
alibi witness.  He testified that the defendant picked
him up at his home in Bloomfield around 11:00 in the
morning of September 11, 1992, and after picking up
some motorcycle parts, the two spent the rest of the
day bar hopping.  He said they returned to defendant's
apartment late Friday night or early Saturday morning
and left the next day at about 11:00 a.m.

Defendant testified on her own behalf.  She stated
that Carmelo Illarraza came to her apartment on
Saturday, September 12, and remained with her the
entire time until defendant was arrested on Sunday
morning.  She denied stabbing Padilla.  Defendant

claimed she had no knowledge of a letter she'd written to her sister from jail detailing "Tattoo dying, his body parts coming out, his getting kicked in the face after he was killed, his body being dumped, and [defendant's] setting up the murder and planning it." She claimed that she had trouble remembering many of the things that had happened to her because of the medication that she was taking.  Defendant also claimed that any details about a stabbing written in letters to her sister, were caused by nightmares she was having about witnessing a stabbing as a ten-year old child growing up in Harlem.

(Ra71-73.)

Following a jury trial, Petitioner was convicted of knowing or purposeful murder.  N.J.S.A. 2C:11-3a(1) or (2).  On May 9, 1995, the trial judge imposed a sentence of life in prison with a thirty-year period of parole ineligibility.  (Ra3-4.)

On direct appeal, the Superior Court of New Jersey, Appellate Division, affirmed the conviction, but remanded for resentencing.  (Ra70.)  An amended judgment of conviction was entered on January 22, 1998.  Petitioner was again sentenced to life in prison with a thirty-year parole disqualifier.  (Ra103-104.)  By Order entered February 25, 1998, the Supreme Court of New Jersey denied certification.

Petitioner pursued a second appeal as to the amended judgment of conviction.  The Appellate Division denied Petitioner's second appeal, (Ra115), and by Order entered September 13, 1999, the Supreme Court of New Jersey denied certification, (Ra129).

4

On April 28, 2000, Petitioner filed her first state-court motion for post-conviction relief.  (Ra130-138.)  Following a non-evidentiary hearing, the trial court denied relief.  (10T; Ra280.)  The Appellate Division affirmed the denial of relief and, by Order entered July 3, 2003, the Supreme Court of New Jersey denied certification.  (Ra426; Ra448.)

This Petition, dated May 18, 2004, followed.

## II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II). A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

6

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment.  See
Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),
cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL
1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell,
290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and
cases discussed therein).

The deference required by § 2254(d) applies without regard
to whether the state court cites to Supreme Court or other
federal caselaw, "as long as the reasoning of the state court
does not contradict relevant Supreme Court precedent."  Priester
v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v.
Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19
(2002)).

Although a petition for writ of habeas corpus may not be
granted if the Petitioner has failed to exhaust his remedies in
state court, a petition may be denied on the merits
notwithstanding the petitioner's failure to exhaust his state
court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v.

Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.

Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent

standards than more formal pleadings drafted by lawyers.  Estelle

v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.

519, 520 (1972).  A pro se habeas petition and any supporting

submissions must be construed liberally and with a measure of

tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);

Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),

cert. denied, 399 U.S. 912 (1970).]

III.  ANALYSIS

A.  Timeliness

The limitation period for a § 2254 habeas petition is set

forth in 28 U.S.C. § 2244(d), which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of—
>
>    (A) the date on which the judgment became final by
> the conclusion of direct review or the expiration of
> the time for seeking such review; ...
>
> (2) The time during which a properly filed application
> for State post-conviction or other collateral review
> with respect to the pertinent judgment or claim is
> pending shall not be counted toward any period of
> limitation under this section.

Thus, evaluation of the timeliness of a § 2254 petition requires

a determination of, first, when the pertinent judgment became

"final," and, second, the period of time during which an application for state post-conviction relief was "properly filed" and "pending."

A state-court criminal judgment becomes "final" within the meaning of § 2244(d)(1) by the conclusion of direct review or by the expiration of time for seeking such review, including the 90-day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.

An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, Carey v. Saffold, 122 S.Ct. 2134 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, Swartz v. Meyers, 204 F.3d at 420-24.  However, "the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)."  Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 122 S.Ct. 364 (2001).

The limitations period of § 2244(d) is also subject to equitable tolling.  Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 122 S.Ct. 323 (2001); Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999); Miller v. New Jersey State Dept. of Corrections, 145 F.3d 616, 618 (3d Cir. 1998).  Equitable tolling applies

> only when the principles of equity would make the rigid application of a limitation period unfair.  Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights.  The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims.  Mere excusable neglect is not sufficient.

Miller, 145 F.3d at 618-19 (citations omitted).  Among other things, the Court of Appeals for the Third Circuit has held that equitable tolling may be appropriate "if the plaintiff has timely asserted his rights mistakenly in the wrong forum," i.e., if a petitioner has filed a timely but unexhausted federal habeas petition.  Jones, 195 F.3d at 159.  See also Duncan v. Walker, 533 U.S. 167, 183 (2001) (Stevens, J., joined by Souter, J., concurring in part) ("neither the Court's narrow holding [that the limitations period is not statutorily tolled during the pendency of a premature federal habeas petition], nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petition as a matter of equity"); 533 U.S. at 192 (Breyer, J.,

dissenting, joined by Ginsburg, J.) (characterizing Justice Stevens's suggestion as "sound").

Finally, "a pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court." Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1999) (citing Houston v. Lack, 487 U.S. 266 (1988)).

Here, Petitioner's conviction became final on December 12, 1999, ninety days after the New Jersey Supreme Court denied certification in the direct appeal from the amended judgment of conviction. See Brown v. Ortiz, 2006 WL 680976 (D.N.J. 2006) (where state prisoner is re-sentenced, finality is measured from the re-sentencing proceedings); Candelario v. Hendricks, 2005 WL 3440473 (D.N.J. 2005) (same). She filed her state motion for post-conviction relief 138 days later, on April 28, 2000. The limitations period thereafter was tolled until July 3, 2003, when the New Jersey Supreme Court denied certification. This Petition is dated May 18, 2004, 320 days later. The total time which lapsed between the date the conviction became final and the earliest possible filing of this Petition, excluding the period when a properly filed state motion for post-conviction relief was pending, was 458 days. Thus, the Petition is untimely unless equitable tolling applies.

Petitioner asserts in her Traverse that equitable tolling does apply, because her failure to file the Petition earlier was

due to factors beyond her control.   Specifically, she argues that she

> was prevented from more promptly filing her habeas
> petition because of her physical infirmities which were
> caused by her prison work assignment and for which she
> received no medical treatment or woefully inadequate
> medical treatment by the New Jersey Department of
> Corrections.   These physical infirmities included
> serious sciatica in her back, a condition termed
> "trigger finger" in her right hand, and an incident
> which required hospitalization after the petitioner
> inhaled toxic fumes caused by bleach and cleaning
> agents that she was required to use in cleaning the
> prison hospital.   These ailments have left petitioner
> physically infirm and unable to visit the prison law
> library to research the law and move more quickly in
> drafting and filing her federal habeas petition.   These
> medical records are in the possession of the New Jersey
> Department of Corrections and its contracted medical
> care provider, Correctional Medical Services.

(Traverse ¶ 23.)

Petitioner has failed to advise the Court of the dates on which her medical problems prevented her from conducting necessary legal research.   In addition, the Court notes that all of the claims raised here were raised in the state courts.   Thus, Petitioner had available sufficient legal research to submit a basic habeas petition from the date her state post-conviction relief proceedings concluded.   Petitioner has failed to establish any grounds for equitable tolling.   In any event, even if the Petition were timely, Petitioner is not entitled to relief.

B.   <u>Wiretap Evidence</u>

In her motion for post-conviction relief, Petitioner asserted the claim, also asserted here, that Maria LaRosa had no

actual or apparent authority to consent to wiretap of Petitioner's telephone.  Respondents assert that this claim was procedurally defaulted and that this Court is, therefore, barred from considering it.  (Response Brief at 11-15.)

In denying post-conviction relief, the trial court explicitly stated that this claim was barred by New Jersey Court Rule 3:22-4, because it could have been raised on direct appeal. (10T.)[2]

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)].  Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."  Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

On habeas review of state prisoner claims, a federal court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of

---

[2] It is not clear from the Notice of Appeal whether Petitioner intended to appeal the denial of relief with respect to this claim.  The letter brief submitted by assigned counsel did not address this issue.  Neither did the Appellate Division explicitly address this issue.

any possible state law ground is not clear from the face of the opinion.'" Coleman, 501 U.S. at 734-35 (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)).[3]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court.  James v. Kentucky, 466 U.S. 341, 348-351 (1984).  See also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  See Coleman, 501 U.S. at 752 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  Coleman, 501 U.S. at 754.  Neither a pro

---

[3] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  <u>Murray</u> at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  <u>Caswell v. Ryan</u>, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982)).  In the context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."  <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Carrier</u>, 477 U.S. at 496.  "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror

would have convicted him." <u>Werts</u>, 228 F.3d at 193 (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 326 (1995)).

Here, the State courts determined that Petitioner's wiretap claim was barred under New Jersey Court Rule 3:22-4, which provides:

> Any ground for relief not raised in a prior proceeding under this rule, or in the proceedings resulting in the conviction, or in a post-conviction proceeding brought and decided prior to the adoption of this rule, or in any appeal taken in any such proceedings is barred from assertion in a proceeding under this rule unless the court on motion or at the hearing finds (a) that the ground for relief not previously asserted could not reasonably have been raised in any prior proceed; or (b) that enforcement of the bar would result in fundamental injustice; or (c) that denial of relief would be contrary to the Constitution of the United States or the State of New Jersey.

Petitioner does not contend that Rule 3:22-4 is anything but a "firmly established and regularly followed state practice," and case law suggests that the rule is firmly established and regularly followed, the notable exception involving claims of ineffective assistance of counsel. <u>See</u>, <u>e.g.</u>, <u>Cabrero v. Barbo</u>, 175 F.3d 307, 312-14 (3d Cir. 1999) (dicta). Thus, the State courts denied relief on an independent and adequate state ground, precluding review here of Petitioner's claim that the wiretap evidence should have been suppressed, unless she can meet the "cause" and "prejudice" standard or demonstrate that failure to consider the claim will result in a miscarriage of justice. Petitioner has failed to allege any facts suggesting either cause

16

or prejudice for her procedural default.  Nor has she presented any evidence suggesting that failure to consider the claim will result in a miscarriage of justice.  To the contrary, it is apparent that there was overwhelming evidence of her guilt. Petitioner is not entitled to relief on this claim.

C.    <u>Ineffective Assistance of Trial Counsel</u>

Petitioner contends that his trial counsel provided ineffective assistance because of the following failings: (1) inadequate cross-examination of Maria LaRosa because of a conflict of interest based upon prior representation of Ms. LaRosa, (2) failure to argue an alternate theory of the crime implicating Manuel Mangual, from whom counsel had received referrals for legal work, (3) pursuing an incredible defense theory instead of advising Petitioner to testify truthfully, (4) failure to move to suppress wiretap evidence, (5) falling asleep during trial testimony.

In the action for post-conviction relief, the trial court rejected this claim on the merits.

> [T]rial courts should grant evidentiary hearings to resolve ineffective assistance of counsel claims if the defendant has presented a prima facie claim in support of post-conviction relief.
>
> An ineffective assistance of counsel is rooted in the Sixth Amendment which, in part, guarantees a criminal defendant the right to an attorney.  The seminal cases are Strickland vs. Cronic, 466 U.S. 668, a 1984 case, and U.S. vs. Cronic, 466 U.S. 648, a 1984 case.  In this Strickland-Cronic approach to claims of

ineffective assistance of counsel was adopted by New Jersey in State vs. Fritz, 105 N.J. 42, a 1987 case.

And there, Fritz reiterates the two-prong test as enunciated in Strickland and further tailored in Cronic.  First, the defendant must show that defense counsel's performance was deficient.  Deficiency in this context has been interpreted to mean that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.

The second prong requires a showing that the defendant was actually prejudiced by counsel's alleged deficient performance.  This requires a showing of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.  Only the complete denial of one's right to counsel justifies the reviewing court to presume that defendant was prejudiced.  As such, generally, this prejudice must be proven by the defendant, cannot be presumed.

As previously outlined, petitioner argues that the defense counsel at the time of trial was less than sufficient.  However, it is readily apparent that defense counsel's actions at the time of the trial were most likely a matter of tactical consideration.

Furthermore, it is uncontroverted that strategic decisions made by counsel at trial are not challengeable to their effectiveness.  I had the ability to watch the trial, I saw the cross-examination, I did not find that anything was egregious or apparent errors.  One is not entitled to a perfect defense, rather to a reasonably competent defense, and certainly, Mr. Peduto was competent in this case.

I cannot determine whether or not certain decisions that he made were tactical decisions or not, I could not find that they would rise to ineffective assistance, or that the defendant was prejudiced by counsel's manner of representation, and in reviewing the matter, and the Court then re-reviews this matter, that when I try a case I watch and observe counsel both for the State and the defense, particularly as to the defense, to see that there is matters that would question whether or not counsel is being effective.  I

18

did not find that in this case.  If I had, I would have
addressed it at the appropriate time.

So as to this issue, I find that there is nothing
before me that indicates that there was ineffective
assistance of counsel.

Now, additionally as to that, the defendant's
decision not to testify was a free and voluntary
decision made by her.  She didn't testify, she didn't
want to.  She was asked the appropriate questions in
the trial, as this Court does in every case.  She made
her determination not to testify, which is not unusual.
Most defendants, in the experience of this Court, do
not testify.  That doesn't persuade the Court that she
has made a prima facie case.

Point Two, defense counsel's conflicts with the
witness.  I know of nothing that speaks of conflict.
Miss Vasquez, throughout the course of her many
P.C.R.'s before the Court and appearing here before the
Court, sometimes makes statements upon which I can find
no basis in fact.  This is one of them.  I have nothing
to base this on.  I think I agree with the State whole-
heartedly, this is nothing more than an assertion made
by Miss Vasquez based on the information she received
somewhere.

As to Point Three, Miss LaRosa testified before
this Court, and I had the benefit of pretrial and trial
hearings, she was the one that testified in court that
she tapped her own phone, wanted the prosecutor to tap
her phone because she was afraid of what her sister was
saying to her about the details of deaths or death that
she wished to inflict.  This was very clear that one
can tap their own phone, and there is nothing to
indicate that Miss LaRosa was coerced into that.
Nothing to indicate that it wasn't done freely and
voluntarily.  This contention that Maria LaRosa had no
authority to initiate a wiretap in the telephone and
that the wiretapping or recording of conversations was
illegal and should have been suppressed was without
merit.

... However, there's no question that Miss LaRosa
did accurately act in her taping conversations.  There
was no governmental heavy-handedness or nefarious

handedness, and consequently, that point fails, as
well.

...

Finally, that she was denied effective assistance
of counsel because her attorney fell asleep during the
trial.  I have nothing upon which to base that, and I
can say nothing more than I believe this is just
another statement by Miss Vasquez that has no basis in
reality.

(10T10-14.)  The Appellate Division affirmed the denial of relief

on this claim and agreed that Petitioner had failed to present

sufficient support for the claim even to warrant an evidentiary

hearing.  (Ra426.)

The Counsel Clause of the Sixth Amendment provides that a

criminal defendant "shall enjoy the right ... to have the

Assistance of Counsel for his defence."  U.S. Const. amend. VI.

The right to counsel is "the right to <u>effective</u> assistance of

counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)

(emphasis added).

To prevail on a claim of ineffective assistance of counsel,

a habeas petitioner must show both that his counsel's performance

fell below an objective standard of reasonable professional

assistance and that there is a reasonable probability that, but

for counsel's unprofessional errors, the outcome would have been

different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694

(1984).  A "reasonable probability" is "a probability sufficient

to undermine confidence in the outcome."  <u>Strickland</u> at 694.

Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Here, the state courts correctly identified the applicable
law.  With one exception, the decision of the state courts is
neither contrary to, nor an unreasonable application of, that
clearly-established federal law, nor is it based on an
unreasonable determination of the facts in light of the evidence
presented in the state court proceedings.

The one exception involves Petitioner's claim that her
counsel provided ineffective assistance by pursuing an incredible
defense and failing to advise her to testify truthfully.  In the
Petition, Petitioner describes the testimony she should have been
advised to give.

> Counsel's decision to pursue a poorly-chosen and
> incredible defense instead of advising Ms. Vazquez to
> testify as to the actual events in her apartment on the
> night of the homicide (Sept. 11, 1992) was
> constitutionally ineffective assistance because no jury
> would have believed such testimony.  At counsel's
> advice, Ms. Vazquez testified at trial and denied that
> the victim (Aurelio Padilla) had even been in her
> apartment on the night of the murder.  She stated that
> her descriptions to Maria LaRosa about the gruesome
> sight of blood and the victim's death were "flashbacks"
> from a murder she had witnessed as a child.  The
> victim's blood which was in her car was explained as
> having been left by the victim after a confrontation at
> Ms. Vazquez' apartment two nights before the murder.
> These explanations, when considered in conjunction with
> the physical evidence and Ms. Vazquez' own phone
> conversations and letters to Maria LaRosa, were simply
> incredible.  Had counsel advised Ms. Vazquez to testify
> as to the actual events which took place, the physical
> evidence would have supported her story: Manny Mangual,
> angry with the victim after having learned of his
> physical assault against Ms. Vazquez two nights before
> the murder, then pressured Ms. Vazquez into placing a
> phone call to lure the victim to Ms. Vazquez' apartment
> under the guise of "talking to him," then, when [Mr.]

Padilla arrived, approaching him from behind and
brutally stabbing him repeatedly.  (Accounting for the
presence of the victim's blood in Ms. Vazquez'
apartment).  Mangual then placed the victim's body in
Ms. Vazquez' car (accounting for the victim's blood's
presence therein) and transported the body to the scene
where it was found.  Had counsel placed this before the
jury and argued that Ms. Vazquez was used by Mr.
Mangual to unwittingly lure the victim to his death (a
theory which fits with the physical and other
evidence), the jury would have likely saw this crime
for what it was.  -- a murder committed by Mr. Mangual
in which Ms. Vazquez did not know his intention to kill
the victim.  This was important because, had counsel
presented the true facts through Ms. Vazquez'
testimony, there exists a reasonable probability that
she would not have been convicted of murder but a
lesser degree of homicide if she were convicted of
homicide at all.  Counsel's strategic decisions were
not preceded by the "thorough investigation of facts
and law" required for a reviewing court to accord the
deference to such strategic decisions required by
STRICKLAND v. WASHINGTON.

(Petition, Point One (3) (citations omitted).)

The PCR court erroneously resolved this issue based upon a
mistaken impression that the claim involved a decision not to
testify and that Petitioner had not testified.  However,
Petitioner did testify in the case, (6T), and she contends that
counsel gave her erroneous advice about how to testify.

Petitioner contends that the result would have been
different if she had testified as described above.  To the
contrary, however, the testimony that she contends counsel should
have advised her to give conflicts with statements she made to
her sister in wiretapped telephone conversations and the letter.
The jury still would have been left with the task of resolving

Petitioner's conflicting statements about the offense.  It cannot be said that it is likely the result would have been different if she had testified in the manner described.  Accordingly, Petitioner is not entitled to relief on her claim of ineffective assistance of trial counsel.

D.   <u>Prosecutorial Misconduct</u>

Petitioner argues that the prosecutor engaged in misconduct, in his closing argument, because he expressed personal belief in Petitioner's guilt, minimized the consequences of the jury's responsibility for returning a guilty verdict, and vouched for the credibility of prosecution witness Maria LaRosa.  Respondents assert that this claim was procedurally defaulted.

The PCR court found this claim barred by Rule 3:22-4. (10T14-16.)  As explained, <u>supra</u>, Rule 3:22-4 is a "firmly established and regularly followed state practice." Petitioner's procedural default as to this claim in state court bars federal habeas relief.  Petitioner is not entitled to relief on this claim.

E.   <u>Jury Instructions</u>

Finally, Petitioner argues that the trial judge gave an erroneous instruction on accomplice liability in that he failed to instruct the jury that a principal and an accomplice could be found guilty of different crimes based on their individual mental states.  She contends that the evidence at trial would have

supported a verdict that she had acted not as the sole murderer
but as an accomplice to somebody else.   The Appellate Division
rejected this claim of error on direct appeal.

Defendant argues that the jury instructions failed to
inform the jury that she could be found guilty as an
accomplice to a lesser included offense even it if
believed the principal actor was guilty of a greater
offense.   Specifically, defendant contends that the
trial judge's jury charge on accomplice liability did
not comply with the principles established in State v.
Bielkiewicz, 267 N.J. Super. 520 (App. Div. 1993).

In a murder trial, the jury should be clearly
informed that even if it concludes that the principal
committed purposeful or knowing murder, the accomplice
can be found guilty of a lesser offense.   Bielkiewicz,
supra, 267 N.J. Super. at 533.

An accomplice is a person, who with the purpose of
promoting or facilitating another person in the
commission of an offense, aids or agrees or attempts to
aid the other person in planning or committing the
offense.   N.J.S.A. 2C:2-6c(1)(b).   The jury must be
instructed that to convict a defendant as an
accomplice, it must find that he or she "shared in the
intent which is the crime's basic element, and at least
indirectly participated in the commission of the
criminal act."   State v. Fair, 45 N.J. 77, 95 (1965).
However, parties who participate in a criminal act may
have different levels of intent and thus, each party in
a crime is guilty only to the degree of his own intent.
Ibid.   When a defendant is charged as an accomplice to
an offense for which different degrees are submitted to
the jury, the judge's instructions must "carefully
impart[] to the jury the distinctions between the
specific intent required for the grades of the
offense."   State v. Weeks, 107 N.J. 396, 410 (1987).

Here, the trial judge agreed to charge the jury on
murder and the lesser included offenses of aggravated
manslaughter and reckless manslaughter.   At the charge
conference, the judge made it clear that he would
instruct the jury that the defendant could be found
guilty as an accomplice of a lesser crime than the
principal.   Near the beginning of the charge, the judge

25

stated as part of the instructions on accomplice
liability:

Okay.  A defendant can be found guilty as an
accomplice of a lesser included offense than the
actor would have been found guilty.  Now, I
realize in this case there is no other person
being tried, and the State doesn't have to prove
beyond a reasonable doubt the identity of the
person who committed the act.  They simply have to
prove beyond a reasonable doubt that the act was
committed when alleged to have been committed, and
that the defendant was there as an aider or
abettor, either soliciting or facilitating the
crime, and that she acted with the same mental
culpability as the actor, and that as an aider and
abettor it was her purpose to facilitate the crime
and that -- and secondly, she had a sharing of the
type of culpability necessary for the offense,
that is, the accomplice in order to be convicted
of the crime committed by another must have a
shared criminal intent as to every material
element of that crime of the actor.  So then if a
person who acted, that is the actor or principal,
is responsible for a crime that requires
purposeful, knowing or reckless State of mind,
accomplice liability may attach to the person
acting as an accomplice if she shared a purpose to
participate in the crime.  Thus, an accomplice
must act purposely.  For example, if a crime
requires a reckless state of mind to be proven,
the accomplice may be liable for that crime if the
proofs show that the person acted purposely as
[an] accomplice.  That is, acted with a purpose to
promote, facilitate or abet the crime.  The
accomplice must have intended that the actor's
conduct took place.  An accomplice who purposely
promoted or facilitated the actor's reckless
conduct and was aware when she did so, considering
the circumstances then known to her that the
criminal result was substantial and unjustifiable
risk of that conduct and nevertheless promoted
that conduct in conscious disregard of that risk,
is liable as an accomplice for the actor's
reckless conduct as well.  The point is, each
participate (sic) in a common plan may participate
therein with a different state of mind.  It is
depended upon her state of mind, not anyone

26

else's.  That's why I explained to you the
distinction between the specific intent required,
or I will explain to you for the various grades of
the offenses.  An accomplice may be convicted on
proof of the commission of the crime or of her
complicity herein, though the person who claimed
to have committed the crime has not been
prosecuted or convicted or not present here at
this trial.

The State doesn't have to prove the identity of
that person, merely that that person actually
acted on the date and place in question.  However,
one cannot be held to be an accomplice unless you
find that they possessed the same criminal state
of mind that is required to be proved against the
person who actually committed the criminal act.
In order to convict the defendant as an accomplice
to the crime charged, you must find that the
defendant had the purpose to participate in that
particular crime.  She must act with purpose of
promoting or facilitating the commission of the
substantive offense for which she is charged.

[Emphasis added by Appellate Division.]

The judge then instructed the jury on the
definition of purpose and the elements of murder,
aggravated manslaughter, and manslaughter.  After
giving the elements and the state of mind required, the
judge reminded the jury that in considering accomplice
liability the jury must:

... determine the defendant's purpose.  It can
only be purposeful as an aider or abettor.  Then
you determine the offense itself as committed and
whether or not that was within her contemplation
as an aider and abettor, because one can be found
guilty as a principal of a greater offense than
the aider or abettor ... can be found guilty.  For
example, she can be found guilty as an aider or
abettor, or can be found guilty of the same
offense or lesser offense as the actor, if you
consider that.

[Emphasis added by Appellate Division.]

27

Although the charge on accomplice liability could have been clearer, the charge adequately conveyed that defendant could be found guilty of a lesser offense than the principal.  Defendant did not object to this portion of the charge.  Moreover, the charge clearly explained to the jury that to convict defendant as an accomplice, the jury must first find that defendant intended to commit the same offense as the principal. While the judge did not specifically instruct the jury that it could convict the defendant of aggravated manslaughter if it believes the principal was guilty of purposeful or knowing murder, the judge did inform the jury it could find defendant guilty of a lesser offense than the principal.  The judge carefully explained each of the lesser included offenses and instructed the jury that it must determine defendant's purpose.

When defendant does not object to the jury charge at trial, the applicable standard of review is that of plain error, which is error clearly capable of bringing about an unjust result.  R. 2:10-2.  We are satisfied that even if the judge failed to specifically tell the jury that defendant could be guilty of aggravated manslaughter or manslaughter even if the principal were guilty of murder, his failure to do so here was not plain error.  R. 2:10-2.  As noted, the judge carefully explained each of the lesser included offenses and instructed the jury that it must determine defendant's state of mind to determine which offense, if any, she had committed.  In addition, the judge, on at least two occasions, explained that defendant could be found guilty of a lesser offense than the principal.

Our Supreme Court recently examined whether the accomplice liability charge was harmless error in the context of an application for post-conviction relief.  See State v. Norman, 151 N.J. 5 (1997).  In examining the accomplice charge under a claim of ineffective assistance of counsel argument, the Court initially concluded that the jury charge was deficient because the trial judge had failed to include an instruction that the defendant could be found guilty as an accomplice of a lesser included offense even though the principal is found guilty of a more serious offense. The Court observed, however, that the accomplice liability instructions were expressly made applicable to the lesser included offenses as well as the murder offense.  The Court stated:

Thus the jury was well aware of the alternative
offenses and was even aware that the accomplice
instructions applied to them.  The only possible
confusion would be if the jury had concluded that
the defendant on trial possessed a less [culpable]
state than his codefendant.  Yet, the jurors were
not charged with the task of determining the
codefendant's guilt, so it is, at best, a remote
possibility that they were distracted from their
task by a conclusion that the principal had
possessed a more culpable intent than the
accomplice.

[Norman, supra, 151 N.J. at 39.]

The Court concluded that the accomplice liability
charge was harmless error.  See also State v. Scherzer,
301 N.J. Super. 363, 475 (App. Div.), certif. denied,
151 N.J. 466 (1997); cf. State v. Jackmon, ___ N.J.
Super. ___ (App. Div. 1997); State v. Cook, 300 N.J.
Super. 476, 487-89 (App. Div. 1997); State v. Williams,
298 N.J. Super. 430, 440-42 (App. Div.), certif.
denied, 150 N.J. 27 (1997).  So here, the jury was well
aware of the alternative charges and that it was
required to determine the state of mind of the
defendant.  We are convinced that any error in the
accomplice charge was harmless.

(Appellate Division Opinion dated Dec. 8, 1997, at 4-10,

Ra73-79.)

Generally, a jury instruction that is inconsistent with

state law does not merit federal habeas relief.  Where a federal

habeas petitioner challenges jury instructions given in a state

criminal proceeding,

[t]he only question for us is "whether the ailing
instruction by itself so infected the entire trial that
the resulting conviction violates due process."  It is
well established that the instruction "may not be
judged in artificial isolation," but must be considered
in the context of the instructions as a whole and the
trial record.  In addition, in reviewing an ambiguous
instruction ..., we inquire "whether there is a

29

>reasonable likelihood that the jury has applied the
>challenged instruction in a way" that violates the
>Constitution.  And we also bear in mind our previous
>admonition that we "have defined the category of
>infractions that violate 'fundamental fairness' very
>narrowly."  "Beyond the specific guarantees enumerated
>in the Bill of Rights, the Due Process Clause has
>limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations

omitted).  Thus, the Due Process Clause is violated only where

"the erroneous instructions have operated to lift the burden of

proof on an essential element of an offense as defined by state

law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re

Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause

protects the accused against conviction except upon proof beyond

a reasonable doubt of every fact necessary to constitute the

crime with which he is charged"); Sandstrom v. Montana, 442 U.S.

510, 523 (1979) (jury instructions that suggest a jury may

convict without proving each element of a crime beyond a

reasonable doubt violate the constitutional rights of the

accused).

Where such a constitutional error has occurred, it is

subject to "harmless error" analysis.  Smith v. Horn, 120 F.3d at

416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f

the [federal habeas] court concludes from the record that the

error had a 'substantial and injurious effect or influence' on

the verdict, or if it is in 'grave doubt' whether that is so, the

error cannot be deemed harmless."  Id. at 418 (citing California

30

v. Roy, 519 U.S. 2, 5 (1996)).  In evaluating a challenged

instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge.  If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal

quotations and citations omitted).

Here, the Appellate Division evaluated the overall jury

charge and found that the instructions clearly informed the jury

that it must determine the defendant's state of mind to determine

which offense, if any, she had committed.  The instructions also

clearly explained that an accomplice or aider and abettor could

be found guilty of a lesser offense than the principal.  The

Appellate Division also determined that any error that might have

occurred was harmless.

The decision of the Appellate Division is neither contrary

to nor an unreasonable application of the applicable federal law,

nor is the decision based upon an unreasonable determination of

fact.  Accordingly, Petitioner is not entitled to relief on this

claim.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or

judge issues a certificate of appealability, an appeal may not be

31

taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


 

 

 

                                                  /s/ Joel A. Pisano

_____

                                                 JOEL A. PISANO
                                                 United States District Judge

Dated: June 8, 2006